DONNA SPANN, Plaintiff-Appellant, v. SPRINGFIELD CLINIC, Defendant-Appellee.

Fourth District   No. 4—91—0121

Opinion filed August 6, 1991.

R.W. Deffenbaugh, of Deffenbaugh, Loewenstein, Hagan, Oehlert & Smith, P.C., of Springfield, for appellant.

Daniel Maher, of Stratton, Dobbs, Nardulli & Lestikow, of Springfield, and Mark E. Furlane and Alan S. King, both of Gardner, Carton & Douglas, of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On May 22, 1990, plaintiff Donna Spann filed a complaint in the circuit court of Sangamon County against defendant Springfield Clinic, a partnership, contending defendant improperly discharged her from her employment with defendant. She sought reinstatement and money damages. On December 6, 1990, plaintiff filed an amended three-count complaint against defendant. Count I alleged defendant had terminated plaintiff's employment without affording her grievance-procedure rights provided for in an employees' handbook. Count II alleged defendant breached a duty of good faith owed plaintiff pursuant to the employment contract between the parties. Count III contended defendant inflicted intentional emotional harm on plaintiff. On January 7, 1991, defendant filed a motion pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)) maintaining a disclaimer provision in the handbook negated any right of plaintiff to a grievance procedure and that

counts II and III did not set forth causes of action. On January 22, 1991, the circuit court allowed defendant's motion dismissing the cause with prejudice.

On appeal, we need not consider the propriety of the dismissal of the count alleging intentional infliction of emotional injuries, as plaintiff has cited no error in that regard. The substance of her argument on appeal is that the law should allow redress for a faithful at-will employee who, as she alleges, is discharged with no reason given and apparently because of mistake. She contends this is particularly true when the employee has also been given a handbook defining employee rights to a grievance procedure which was not followed. However, we hold that neither statutory law nor judicial precedent has extended the rights of an at-will employee as plaintiff asserts, and the employee handbook set forth by the pleadings makes clear no grievance rights were granted to plaintiff by that handbook. Accordingly, we affirm.

Plaintiff's amended complaint alleged a great deal of factual information and attached to it were various documents and affidavits. The common substance of counts I and II were allegations that (1) plaintiff was hired on July 29, 1985, and had served as a faithful employee with good evaluations until March 28, 1990, when she was called into conference with defendant's administrator and co-employee Jackie Wolf; (2) those employees were then informed of a letter by Julie Smith asserting that the confidentiality concerning her pregnancy had been violated by someone; (3) Wolf admitted she had revealed the information to plaintiff and others; (4) plaintiff had told Smith of Wolf's telling others of Smith's pregnancy and Smith had written to the administrator telling him that Wolf had told plaintiff she had obtained confidential information from clinic files concerning Smith's pregnancy; (5) a counseling memorandum had stated a determination had been made that plaintiff saw Smith getting a sonogram and began seeking to find out why from confidential information; (6) the foregoing matter in the memo was untrue; and (7) plaintiff was fired and was told she was fired for teasing someone.

Both counts also stated (1) before discharge, plaintiff had no benefit of the "Formal Problem Solving Clearance Procedure" set forth in the handbook; (2) plaintiff signed an acknowledgment of receipt of the handbook but did not understand she could be fired for allegations which were untrue; and (3) defendant violated the terms of the handbook. Count II also asserted (1) defendant had a duty of using good faith in the investigation and determination of the charges against plaintiff; (2) defendant had greater power than did plaintiff and that

power was unchecked; and (3) the provisions of the handbook for employee termination proceedings should be followed.

■ Plaintiff's theory that she had certain procedural rights arising from an employee handbook she had been given by defendant arises from the decision in *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. There the court held the general "employment-at-will rule," which allowed either party in an employment-at-will relationship to terminate the employment for any reason, was only a presumption which could be overcome by a showing that the parties intended otherwise. The supreme court concluded that traditional requirements for contract formation governed whether any employee handbook created an enforceable contract.

■ The *Duldulao* court set forth the following principles to determine whether an employee handbook creates an employment contract:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

The court concluded that, there, all three conditions were met, and the employer was contractually obligated to provide the grievance procedure contained in its handbook before it would discharge an employee. The court noted that, there, the "handbook contain[ed] no disclaimers to negate the promises made." *Duldulao*, 115 Ill. 2d at 491, 505 N.E.2d at 319.

The *Duldulao* handbook provided that, after completion of a probationary period, an employee "could be terminated only with 'proper notice and investigation' " and three warning notices before discharge. (*Duldulao*, 115 Ill. 2d at 486, 505 N.E.2d at 316.) The court reasoned that, accordingly, the employee would likely assume that discharge would not occur without warnings unless serious misconduct was involved. The court also noted that no disclaimers were involved and the handbook expressly indicated it was " 'designed to clarify [the

employees'] *rights* and duties as employees.' " (Emphasis in original.) *Duldulao,* 115 Ill. 2d at 491, 505 N.E.2d at 319.

After *Duldulao,* this court decided *Anders v. Mobil Chemical Co.* (1990), 201 Ill. App. 3d 1088, 559 N.E.2d 1119, and *Rudd v. Danville Metal Stamping Co.* (1990), 193 Ill. App. 3d 1009, 550 N.E.2d 674. In *Anders* we upheld a summary judgment determining that an employee handbook did not bind an employer to following a particular procedure before discharging an otherwise at-will employee. There, unlike in *Duldulao,* the handbook contained various disclaimers indicating the handbook was not intended to bind the employer. (*Anders,* 201 Ill. App. 3d at 1096, 559 N.E.2d at 1123.) In *Rudd* we upheld the dismissal of a complaint by an employee seeking relief from a discharge relying upon a handbook. This court concluded the handbook was not stated in terms creating a contract between the employer and the employee. As we will explain, we find the handbook in this case similar to that in *Anders* and *Rudd* and materially different from that in *Duldulao.*

The parties do not dispute that the terms of the handbook were incorporated in the pleadings before the circuit court when it ruled. In addition to general statements of the employer's desire to be a good employer and to maintain good employee relations, the portion of the handbook upon which plaintiff relies states:

"Problems, Complaints, and Grievances

Any employee who has a problem, complaint, or grievance should discuss it first with the department supervisor. If satisfaction is not obtained at that level the Personnel Director should be consulted.

Any employee may see either the Personnel Director or the Administrator at any time to discuss a problem.

There is also a formal Problem Clearance Procedure which provides a method for hearing employee concerns and resolving them. The Personnel Director will explain this procedure and assist the employee should it become necessary."

The handbook also states:

"Employees who are hired on this basis receive the full program of benefits offered by the Clinic upon the successful completion of the 90 day probationary period."

And, finally, the handbook provides: "Successful completion of the probationary period will *give rise to eligibility for participation in certain Clinic benefits.*" (Emphasis added.) Among the benefits listed are the terms "problems," "complaints," and "grievances."

The foregoing provisions are substantially different than those in *Duldulao*—which permitted termination only after "notice," "warning," and "investigation" and spoke of employees' "rights" rather than "benefits." (*Duldulao*, 115 Ill. 2d at 490-91, 505 N.E.2d at 318-19.) More importantly, the handbook in *Duldulao* had no disclaimers. Here, the handbook stated:

> "This handbook is intended to be your guide to the operations of Springfield Clinic. However, you should not consider it or any other personnel documents which may be posted or distributed from time to time as a contract of employment.
>
> * * *
>
> We adhere to the principles of individual achievement, effort and freedom of choice. Therefore, neither you nor Springfield Clinic is bound by a contract of employment for a definite period and the rights of either party to terminate the employment relationship are not limited by a contractual commitment."

In addition, the record before the trial court showed a signed receipt by plaintiff of her copy of the handbook, which stated:

> "I hereby acknowledge receipt of a copy of the Springfield Clinic Employee Handbook. I understand that this handbook does not constitute a contract of employment, that neither I nor Springfield Clinic is bound to an employment contract or a commitment to employment for a definite period of time, and that the rights of either party to terminate the employment relationship are not limited."

■ The trial court ruled that plaintiff failed to establish the first principle required by *Duldulao* in order for the handbook to become a contract. We agree. The "policy statement" of the handbook does not contain "a promise clear enough that an employee would reasonably believe that an offer has been made." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) Rather, as in *Anders*, the handbook contains a clear statement that the rights of neither the employer nor the employee to terminate the employment relationship are limited by contract. Also, as we have indicated, even absent any disclaimer, the "benefits" in regard to grievances granted to employees by the handbook are not definite or stated to be rights. Moreover, here, plaintiff has signed an acknowledgement of the existence of defendant's disclaimer of intent to create a contract.

Plaintiff strongly urges us to adopt a rule of public policy which would prohibit an employer from discharging a faithful at-will employee without giving a reason and through mistake, as she maintains she has alleged here. Plaintiff asserts that even if the handbook was

insufficient to create a binding contract, it creates an atmosphere in which the employee places a trust in the employer, and which she contends was violated here. She relies on language in *Duldulao* and cases cited therein which state that the status of at-will employment is not immune from restriction. As did the *Duldulao* opinion, she relies in particular on *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622. However, the restriction upon the at-will status to which those opinions refer is the restriction placed upon the at-will status by a clearly defined contract contained in an employee handbook.

■ Plaintiff also cites *Cleary v. American Airlines, Inc.* (1980), 111 Cal. App. 3d 443, 168 Cal. Rptr. 722, and *Coats v. General Motors Corp.* (1934), 3 Cal. App. 2d 340, 39 P.2d 838, which set forth a rule requiring an employer to act in good faith in discharging an at-will employee. However, as late as 1985 in ruling upon the grounds for a recovery for retaliatory discharge, the supreme court stated, "The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356.) Unquestionably, the conduct with which defendant is charged here does not come within the public policy exception described in *Barr* and originally in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. The violations of public policy described in those cases arose from discharges for exercise of such rights as to file workers' compensation claims (*Kelsay*, 74 Ill. 2d 172, 384 N.E.2d 353) or to report freely violations of law. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.) In *Harrison v. Sears, Roebuck & Co.* (1989), 189 Ill. App. 3d 980, 546 N.E.2d 248, this court held that an employer owed no duty of good faith in discharging an at-will employee.

Plaintiff relies upon *Duldulao* as setting the stage for acceptance of a rule requiring good faith in the discharge of an at-will employee. We see no intent in *Duldulao* to modify the clear strong language of *Barr* which we have quoted. Accordingly, we conclude that even if we favored creation of such a good-faith rule, we should await the recognition of such a rule by the Illinois Supreme Court or the General Assembly.

We affirm for the reasons stated.

Affirmed.

LUND, P.J., and STEIGMANN, J., concur.