STEVE HICKS, Plaintiff-Appellant, v. METHODIST MEDICAL CENTER, Defendant-Appellee.

Third District   No. 3—91—0593

Opinion filed May 18, 1992.

Marcia F. Straub, of Peoria, for appellant.

Ross Canterbury and Kevin L. Elder, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This action was brought by plaintiff Steven Hicks for breach of an employment contract. Following a bench trial, the court rendered judgment for defendant Methodist Medical Center. Plaintiff appeals. We affirm.

Plaintiff Steven Hicks was first employed by defendant in 1983 in its dietary department. After three months, he was terminated because of unsatisfactory performance. In 1984, plaintiff was hired by defendant into its housekeeping department.

During plaintiff's orientation, defendant gave plaintiff a copy of its personnel handbook. Defendant told plaintiff to read the book, which was 39 pages in length, and to sign the acknowledgment form. Plaintiff read the handbook. The handbook contained the following language regarding defendant's grievance procedure, which was set forth as follows:

"Grievance Procedure

Step 1. First the problem should be discussed with the immediate supervisor. If a solution cannot be reached through this discussion, the employee should state the problem on a 'Grievance Form'. *** The form should be completed and given to the respective department head and vice president **no more than seven calendar days** after the affected employee's awareness of the facts giving rise to the grievance. The department head and respective vice president will review the facts. They will provide the employee with a written decision **no later than seven calendar days** of receipt of the Grievance Form.

Step 2. If the matter is not resolved at Step 1, the affected employee should submit the grievance to the Grievance Committee **within seven calendar days** of receiving the written decision.

The Grievance Committee will be composed of five of the most recent 12 'Employees of the Month.' Either party to the grievance may bring before the Committee any fellow employee he or she feels can support the case. The Committee will make a decision on the grievance through a majority vote. The decision of the Grievance Committee is final and binding on all parties." (Emphasis in original.)

The handbook also contained the following provision concerning transfers:

"Transfer Period:

If you accept another position with the MMCI as a result of a job transfer, you will be placed on a 60-day job transfer period. During this time you will be eligible to continue use of all benefits as specified by your job status. Should you fail to meet your job expectations during the transfer period, the MMCI will make a reasonable effort to return you to your previously held job classification or to a reasonably comparable position."

Defendant alleged that though it was not written in the handbook, it was policy that only employees with fully competent rankings and clean disciplinary records were considered qualified for transfer.

On page 38, defendant's handbook contained a disclaimer, which read as follows:

"Revisions:

This employee handbook is subject to revision at any time. It is not the intent of this statement or the Personnel Handbook to establish contractual agreement between the MMCI and employees."

Plaintiff alleged that he did not notice the disclaimer.

Plaintiff worked in the housekeeping department from 1984 until September 1987. In 1986-87, he unsuccessfully filed nine requests for transfers out of housekeeping. In his six performance evaluations, his score steadily declined from a "3/5" in September 1984 to "1.8/5" in September 1987. In March, April, and July 1987, plaintiff was disciplined. He filed a grievance against his supervisor. The grievance committee recommended that plaintiff be transferred out of housekeeping, based on his behavior at the grievance meeting (cursing, muttering under his breath, dropping papers, sighing loudly, and loud speech). In September 1987, plaintiff was transferred to the parking department.

In the parking department, plaintiff's duties included handling money, making change, and computing charges. He had difficulty performing these tasks. Even when trained employees were supervising him, he was often either over or under the amount he was supposed to have in his cash drawer. Plaintiff was given two written warnings for making incorrect change and, later, a one-day suspension. Plaintiff's probation was extended due to his poor performance in the parking deck.

Plaintiff did not file a transfer request form out of the parking department during this time, although plaintiff alleged that he did orally request transfer out. In February 1991, defendant terminated plaintiff.

Plaintiff did not file a grievance regarding the failure to transfer him during the 60-day grace period. Plaintiff did file a grievance when he was fired and requested he be given back his job in the parking department.

Plaintiff sued defendant for breach of contract and claimed $13,795 for lost wages. After a bench trial, the trial court rendered judgment for defendant. It ruled that the disclaimer contained in the handbook was valid and conspicuous. Also, the court stated that defendant's handbook provided a framework of fairness and due process.

Plaintiff appeals, raising two issues for review.

The first issue is whether the trial court erred in finding that the disclaimer was valid and therefore that no contract existed.

■ Whether a contract exists is a question of law to be determined by the court. (*Habighurst v. Edlong Corp.* (1991), 209 Ill. App. 3d 426, 568 N.E.2d 226.) The correctness of ruling on a question of law may be determined independently of the trial court's judgment. (*People ex rel. Edgar v. Curley* (1989), 188 Ill. App. 3d 37, 543

N.E.2d 1088.) An enforceable contract is created if (1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.

Defendant gave plaintiff the handbook at his orientation and told plaintiff to read the contents, which plaintiff did. Plaintiff could have reasonably believed that the statements in the handbook constituted promises clear and certain enough to become a part of an offer of employment. The language used in the handbook was not vague, but was precise and unequivocal. By way of contrast, the language in *Lee v. Canuteson* (1991), 214 Ill. App. 3d 137, 573 N.E.2d 318, that "[i]t is the sincere intent of [employer] to be fair and reasonable with all employees at all times" was found not to be clear enough to constitute an offer.

The final condition set forth in *Duldulao* was also present. Plaintiff commenced work after being given the handbook.

■ Defendant's handbook also contained a disclaimer. In order to negate any promises made in contract provisions, a disclaimer must be conspicuous. (*Nettles v. Techplan* (1988), 3 IER 1262.) The disclaimer itself was located at page 38 of the handbook. It was not highlighted, printed in capital letters, or in any way prominently displayed. Furthermore, the disclaimer was not entitled "Disclaimer," but was located under a section headed "Revisions." This disclaimer was not conspicuous and so did not negate the promises made in the handbook's provisions. We hold that a contract existed.

The second issue is whether defendant breached the contract with plaintiff.

■ After plaintiff filed a grievance against his supervisor in housekeeping, the grievance committee recommended that plaintiff be transferred out of that department. At that time, plaintiff was not qualified for transfer to any other location or position because of his substandard performance review and his discipline problems. The record shows no admission by defendant that plaintiff was qualified for another job. Because plaintiff was not qualified for transfer, defendant was not required under the grievance procedure to transfer plaintiff to parking. The grievance committee's suggestion that plaintiff be

transferred to another department was beyond the remedy rights that it had and was an accommodation of the employee.

Once in parking, if plaintiff had wanted to transfer out, it was his duty to initiate the transfer process by completing a transfer request form. Plaintiff had filled out many requests for transfer in the past and was aware of how to invoke the process. Plaintiff in fact did not complete a transfer request form. Unfortunately he could not perform the duties required of him in parking and was terminated. Any job action remedy he had then was to go back to the grievance procedure. He did file a grievance when he was terminated and the grievance committee upheld the termination.

Under these circumstances, the remedies available to plaintiff under the handbook were satisfied and we find no breach of contract by defendant.

Affirmed.

BARRY, P.J., and HAASE, J., concur.