MARK L. BROWN, Plaintiff-Appellant, v. R.R. DONNELLY AND SONS COMPANY, Defendant-Appellee.

Fourth District    No. 4—94—0566

Argued December 14, 1994.—Opinion filed May 1, 1995.—Rehearing denied June 9, 1995.

COOK, J., dissenting.

Glenn Muller (argued), of Lawrence E. Johnson & Associates, P.C., of Champaign, for appellant.

John L. Barger and Stephen L. Corn (argued), both of Craig & Craig, of Mattoon, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1990, plaintiff, Mark Brown, sued defendant, R.R. Donnelly & Sons Company, his former employer, alleging that defendant wrongfully terminated his employment in violation of the terms of

defendant's employee handbook. In March 1994, the trial court dismissed plaintiff's complaint with prejudice, finding plaintiff was an employee terminable at will.

Plaintiff appeals, and we affirm.

## I. BACKGROUND

Plaintiff alleged in his complaint that defendant hired him in December 1980 as a temporary employee at defendant's Mattoon manufacturing division. Plaintiff became acquainted with defendant's "employee relations manual" (manual) during his temporary employment, and he believed the terms of the manual would govern his employment when he accepted a full-time position with defendant in 1982. Plaintiff worked continuously as a full-time employee for defendant from 1982 until he was fired in August 1988.

Plaintiff further alleged that Dan Silverman and Mark Smith, management employees of defendant, falsely accused him of (1) disrupting the workplace, (2) threatening to kill co-workers, (3) holding a gun to his supervisor's head, (4) being unable to discharge his duties, and (5) lying to company officials. Silverman and Smith confronted plaintiff with these allegations, and he denied them. Defendant subsequently fired plaintiff for lying to company officials, based upon his denial of the allegations, and for committing the alleged acts.

Plaintiff claims his termination violated the following sections of the manual: (1) section ER1-0200, entitled "The Open Door Policy," which provided in part that "[i]t is Company policy to assure that every employee gets a square deal, fair treatment, and *** [an] impartial hearing and handling of complaints"; (2) section ER1-0600, entitled "Employment Security," which provided under subsection II(J) that "[i]t is Company practice to: [b]ase all separations on verified facts, not on anyone's whim or unsupported opinion"; and (3) sections ER5-0110 and ER5-0150, which described the company's formal and informal grievance procedures.

In May 1992, defendant moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). In July 1992, the trial court ruled that section ER1-0200 of the manual, which provided that every employee was entitled to a "square deal" and "fair treatment," did not contain terms that were sufficiently clear to create enforceable contract rights. Accordingly, the court struck the reference to section ER1-0200 from plaintiff's complaint, and plaintiff did not appeal that ruling. The trial court allowed plaintiff to proceed under the theory that the remaining sections of the manual created enforceable rights. In

February 1994, the court heard additional arguments attacking the legal sufficiency of plaintiff's complaint, and in March 1994, reversed its earlier ruling and entered a written order concluding that none of the remaining sections of the manual could be interpreted as creating contractual rights.

## II. STANDARD OF REVIEW

■ The parties agree that the sole issue on appeal is whether the language of defendant's employment manual contained a promise which was sufficiently clear and definite to constitute a contractual offer. This issue constitutes a question of law to be determined in the first instance by the trial court, not a trier of fact. (*Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 521, 545 N.E.2d 373, 376.) The correctness of the trial court's ruling on this question of law will be determined by this court independently of the trial court's judgment. *Hicks v. Methodist Medical Center* (1992), 229 Ill. App. 3d 610, 613, 593 N.E.2d 119, 121.

## III. ANALYSIS

■ An employment relationship with no fixed duration is presumed to be terminable "at will" by either the employer or employee for any or no cause. (*Anders v. Mobil Chemical Co.* (1990), 201 Ill. App. 3d 1088, 1094, 559 N.E.2d 1119, 1122.) However, this presumption may be overcome by demonstrating that the parties contracted otherwise. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314, 318.) In *Duldulao*, the supreme court established the following test for determining whether an employee handbook constitutes a contract of employment:

> "[A]n employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

All three of these conditions must exist to create enforceable contract rights. (*Rudd v. Danville Metal Stamping Co.* (1990), 193 Ill. App. 3d 1009, 1011, 550 N.E.2d 674, 676.) In this case, defendant does not argue that the second or third condition does not exist in the present case, but contends that the first condition of the *Duldulao* test is absent because none of the manual sections plaintiff relied upon contains a clear promise. We agree.

■ We conclude that subsection II(J) of section ER1-0600 of the manual, which states that it is Company practice to "[b]ase all separations on verified facts, not on anyone's whim or unsupported opinion," is too vague to be reasonably construed as an offer. Indeed, we view the presence of the qualifying phrase "it is Company practice to" as rendering the language that follows contingent and uncertain. This is not just an interpretation of "lawyer talk," but an assessment of standard English usage. The phrase "it is Company practice to" contains several different shades of meaning, but in all instances, it means *at least* the following: "This is something the company has done in the past and likely to do in the future, *but you cannot count on it.*"

As opposed to typical contractual language, in which the offeror speaks *prospectively*, the phrase that "it is Company practice to" speaks *retrospectively*. In a normal offer leading to a contract, A promises B that A will do something in the future, if B similarly does something in the future. When A uses the phrase in question here, A is asking B to infer A's *likely conduct* in the future based upon A's past performance, but that is far short of a *promise* by A to engage in that conduct.

The rules for construing contracts are essentially the same as those for construing statutes, and one of the primary tenets of statutory construction is to not disregard certain phrases or language. Plaintiff's position violates that rule by literally reading out of the manual the phrase, "it is Company practice to." Plaintiff does this by construing this section of the manual as if it stated that, "the company promises to base all separations on verified facts, not on anyone's whim or unsupported opinion." If the manual so read, then at least a statement concerning a promise of *future behavior* would exist, however uncertain that promise might be. This manual does not contain that language, however, and this court cannot rewrite a contract any more than it can rewrite a statute.

We further disagree with plaintiff because we view the manual phrase "base all separations on verified facts, not on anyone's whim or unsupported opinion" as hortatory language, falling short of the kind of promise upon which a contract could be premised. This phrase

is like a statement that the company "will treat its employees fairly." We agree with the trial judge's findings, as follows:

> "[This language] appears to be a kind of language that one might find in advertising, or something of that kind, as opposed to legal contracts.
>
> *** The terminology used does not appear to reach the level of a promise. *** Rather, [it] appears to suggest the manner in which the company generally operates, without binding itself to operating in only this particular fashion."

Further, it is impossible to determine what defendant must do in order to comply with subsection II(J) that speaks of "verified facts" sufficient to discharge an employee. The subsection gives no indication of what constitutes "verified facts," nor does it say who must verify the grounds for dismissal or what procedures must be followed.

The present case is distinguishable from *Duldulao* and *Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 568 N.E.2d 827, two cases in which the supreme court found promises sufficiently clear to constitute offers. In *Duldulao*, the manual provided that three warning notices within a 12-month period were "required" before an employee was dismissed. (*Duldulao*, 115 Ill. 2d at 491, 505 N.E.2d at 318.) In *Mitchell*, the handbook stated that an employee "shall not" be dismissed without just cause. *Mitchell*, 142 Ill. 2d at 156, 568 N.E.2d at 828.

In *Rudd*, this court stated that "[a]rticulated procedures are a fundamental and necessary part of an employment contract." (*Rudd*, 193 Ill. App. 3d at 1012, 550 N.E.2d at 676.) The discharged employee in that case relied upon an employee manual which stated as follows:

> " 'Violations [of the manual's rules and regulations] *will be* grounds for progressive disciplinary action, which *may* [(emphasis in original)] include a correction interview, written warning, probation, suspension without pay, *or* [(emphasis in original)] termination.' " (Emphasis added.) (*Rudd*, 193 Ill. App. 3d at 1010, 550 N.E.2d at 675.)

This court noted that the employee manual did not contain a description of specific disciplinary procedures, nor did it purport to promise specific procedures would ever be used prior to termination. (*Rudd*, 193 Ill. App. 3d at 1012, 550 N.E.2d at 676.) Accordingly, we affirmed the trial court's dismissal of the employee's complaint. Likewise, we hold the manual in this case lacks both the specificity and guarantees necessary for a contractual offer.

Plaintiff would also find specific disciplinary procedures which must be followed prior to termination in the grievance procedures set forth in sections ER5-0110 and ER5-0150, and he urges this court to read these sections in conjunction with section ER1-0600. We decline

to follow plaintiff's interpretation of the grievance procedures. Nowhere in these lengthy sections is there any reference to the discipline or termination of employees. Instead, the grievance procedures appear to allow employees to discuss problems which arise on the job. The introduction to section ER5-0150 states that "[t]he purpose of this practice is to provide an effective way for employees to present problems or grievances for consideration, or to obtain correction of unsatisfactory conditions." Sections ER5-0110 and ER5-0150 both provide that "it is [company] policy *** that every employee gets a square deal, fair treatment," but in context, this refers to defendant's guarantee that an aggrieved employee has a right to discuss grievances with the employee's immediate supervisor and appeal, if necessary, the supervisor's decision to higher company officials.

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's order dismissing plaintiff's complaint.

Affirmed.

LUND, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent.

I cannot agree that an employee relations manual which states that it is company policy to assure that every employee gets "[an] impartial hearing and handling of complaints," and that it is company practice to "[b]ase all separations on verified facts, not on anyone's whim or unsupported opinion," is too vague to constitute a contract. A fair reading of the language is that employees are entitled to a hearing and will not be discharged without cause. The words "it is Company practice to," or "it is Company policy to," indicate that the procedures mentioned will be followed unless there is some reason to do otherwise. No such reason has been suggested in this case. Perhaps the company was free to change its policies at any time, but the policies were effective until it did so.

The majority's argument is inconsistent with *Mitchell*:

" 'If there is in effect a policy to dismiss for cause only, the employer may not depart from that policy at whim simply because he was under no obligation to institute the policy in the first place. Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat

its promise as illusory. *Toussaint* [*v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 619, 292 N.W.2d 880, 895.]' " *Mitchell*, 142 Ill. 2d at 171, 568 N.E.2d at 835.

Defendant relies on *Rudd* as support for the proposition that "[a]rticulated procedures are a fundamental and necessary part of an employment contract." (*Rudd*, 193 Ill. App. 3d at 1012, 550 N.E.2d at 676.) The provisions quoted above are brief, but a contract need not be wordy to be clear. In *Mitchell*, the supreme court found an employee was not terminable at will where the employee handbook provided permanent employees could only be terminated for "just cause," although the handbook did not describe any termination procedure, and gave only a nonexhaustive list of examples of "just cause." (*Mitchell*, 142 Ill. 2d at 162, 568 N.E.2d at 831.) *Rudd* is a much easier case than the present one. In *Rudd*, the manual provided for progressive discipline, but further provided that progressive discipline might include immediate termination.

We should be careful equating employment manual guidelines with contractual obligations, but employers can protect themselves without arguing that they did not mean what they said. Illinois courts have repeatedly found that an employee handbook is not reasonably interpreted as part of the contract for employment when the manual contains language that disclaims the creation of a contract of employment. (See, *e.g.*, *Spann v. Springfield Clinic* (1991), 217 Ill. App. 3d 419, 577 N.E.2d 488.) There was no disclaimer here.

I would reverse the decision of the trial court and remand for further proceedings.