THIRD DIVISION 
 September 30, 1996 







No. 1-95-3116

ZORAN CORLUKA,

 Plaintiff-Appellant,

 v.

BRIDGFORD FOODS OF ILLINOIS, INC.,

 Defendant-Appellee.)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County.



Honorable
Michael J. Hogan,
Judge Presiding.


 PRESIDING JUSTICE TULLY delivered the opinion of the court:
 Plaintiff, Zoran Corluka, brought this action in the circuit court of Cook County
against defendant, Bridgford Foods of Illinois, Inc. (hereinafter Bridgford), seeking
to recover damages for a retaliatory discharge, breach of contract and promissory
estoppel after plaintiff's employment was terminated. Defendant filed a motion to
dismiss plaintiff's cause of action under section 2-619 of the Code of Civil Procedure
(735 ILCS 5/2-619 (West 1994)) on the basis that the complaint was barred by the
Illinois Human Rights Act (Act) (775 ILCS 5/1-101 et seq. (West 1994)). The circuit
court granted defendant's motion to dismiss. It is from this judgment that plaintiff
now appeals to this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).
 For the reasons which follow, we affirm in part and reverse in part and
remand.
 The facts pertaining to this appeal are as follows. Corluka was employed by
Bridgford for eight years, beginning in July of 1986 to July of 1994. Bridgford had
issued a "No Harassment Policy" on April 19, 1994, stating that it "would not tolerate
harassment of [its] employees." Bridgford further emphasized, "rest assured that you
will not be penalized in any way for reporting harassment concerning yourself or any
other person. [Bridgford] will take immediate action to punish anyone who seeks
reprisal as a consequence of harassment being reported."
 On June of 1994, Corluka reported to Kathleen Mulligan, one of Bridgford's
attorneys, that his supervisor, who was unidentified in the record, was committing
acts of sexual harassment and other acts of misconduct. Subsequently, Bridgford
demoted Corluka from his position as a supervisor, took away his facility keys, and
informed him that he was no longer eligible to work overtime. Corluka was
discharged on July 15, 1994. Subsequently, Corluka brought this suit, which was
dismissed by the circuit court. 
 On appeal, plaintiff argues that the circuit court erred in dismissing his three-
count complaint alleging causes of action for retaliatory discharge, breach of contract
and promissory estoppel. Plaintiff submits that his causes of action are not
preempted by the Act. 
 The purpose of a motion to dismiss under section 2-619 is to dispose of issues
of law and easily proved issues of fact at the outset of a case. Zedella v. Gibson, 165
Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). In ruling on a section 2-619 motion to
dismiss, a court may consider pleadings, depositions and affidavits. Zedella, 165 Ill.
2d at 185. A reviewing court will determine the propriety of the granting of the
motion to dismiss de novo. Toombs v. City of Champaign, 245 Ill. App. 3d 580, 583,
615 N.E.2d 50 (1993). The question on appeal is "whether the existence of a genuine
issue of material fact should have precluded the dismissal or, absent such an issue
of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency
Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993). For the
purposes of a motion to dismiss, we must accept as true all well-pleaded facts in a
plaintiff's complaint and all inferences that can reasonably be drawn in his favor from
those facts. Geise v. Phoenix Co., 159 Ill. 2d 507, 510, 159 N.E.2d 507 citing Kolegas
v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 9, 607 N.E.2d 201 (1992).
 We begin by addressing count I, the retaliatory discharge. The common law
tort of retaliatory discharge was first recognized in Illinois as a cause of action in
Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 384 N.E.2d 353 (1978). A retaliatory
discharge is a limited and narrow exception (Wieseman v. Kienstra, Inc., 237 Ill. App.
3d 721, 604 N.E.2d 1126 (1992)) to the general rule which states that all employment
is at-will and that an employer may discharge an employee for any or no reason. 
Spann v. Springfield Clinic, 217 Ill. App. 3d 419, 577 N.E.2d 488 (1991). For a valid
claim of retaliatory discharge, it must contain allegations that (1) the plaintiff was
discharged, (2) the discharge was in retaliation for plaintiff's activities, and (3) the
discharge violates a clear mandate of public policy. Dudycz v. City of Chicago, 206
Ill. App. 3d 128, 133, 563 N.E.2d 1122 (1990) citing Hinthorn v. Roland's of
Bloomington, Inc., 119 Ill. 2d 526, 529, 519 N.E.2d 909 (1988).
 The Illinois Human Rights Act (775 ILCS 5/1-101 et seq. (West 1994)) became
effective on July 1, 1980. Thus, a statutory retaliatory discharge cause of action came
into existence. In its Declaration of Policy, the Act states that it is the public policy
of Illinois to prevent sexual harassment in employment (775 ILCS 5/1-102(B) (West
1994). The Act defines "sexual harassment" as "any unwelcome sexual advances or
requests for sexual favor or any conduct of a sexual nature" such as conduct that "has
the purpose or effect of substantially interfering with an individual's work
performance or creating an intimidating, hostile or offensive working environment"
(775 ILCS 5/2-101(E) (West 1994)). Under the Act, 
 "[i]t is a civil rights violation for a person, or for two or
 more persons to conspire, to: [r]etaliate against a person
 because he has opposed that which he reasonably and in
 good faith believes to be unlawful discrimination, sexual
 harassment in employment *** or because he has made a
 charge, filed a complaint, testified, assisted or participated
 in an investigation, proceeding, or hearing under this Act."
 (Emphasis added.) 775 ILCS 5/6-101 (West 1994).
Furthermore, the Act provides, in pertinent part, that: "[e]xcept as otherwise provided
by law, no court of this state shall have jurisdiction over the subject of an alleged civil
rights violation other than as set forth in this Act" (775 ILCS 5/8-111 (West 1994)). 
This Act provides a means of redress for civil rights violations to the exclusion of
common law retaliatory discharge actions (Faulkner-King v. Department of Human
Rights, 225 Ill. App. 3d 784, 587 N.E.2d 599 (1992)) and, accordingly, a complainant
must first file a charge of discrimination with the Illinois Department of Human
Rights before seeking further redress. 
 In the instant case, plaintiff reported the sexual harassment carried on by a
supervisor as was required by defendant's "No Harassment" policy, even though
plaintiff himself was not the object, nor the victim, of his supervisor's alleged sexual
harassment. Consequently, according to plaintiff, he was fired. Plaintiff believes
that this constituted a retaliatory discharge. We agree and find that the Act covers
such a retaliatory discharge action. We note that it is irrelevant whether the sexual
harassment was directed at plaintiff or whether plaintiff merely reported the
harassment. The Act defines retaliatory discharge as a violation of civil rights, and
it is now an exclusive means for redress for a civil rights violation (775 ILCS 5/6-101
(West 1994)). Thus, we hold that the Act preempts the common law retaliatory
discharge. Under these facts, the Act's jurisdictional bar was triggered. Plaintiff had
to timely file his charge of discrimination with the Illinois Department of Human
Rights. Accordingly, we affirm the circuit court's dismissal of count I as it is
preempted by the Act. 
 As to count II, the breach of contract claim, plaintiff argues that the Act was
not intended to preempt contract law. We agree.
 Plaintiff in this case relied on defendant's harassment policy written in a
memorandum dated April 19, 1994, which stated in pertinent part:
 "It is the policy of our Company, that it will not
 tolerate harassment of our employees. The term
 "harassment" includes, but is not limited to, *** conduct
 relating to an individual's race, color, sex, religion, national
 origin, citizenship, age or disability. "Harassment" also
 includes sexual advances, requests for sexual favors,
 unwelcome or offensive touching, and other *** conduct of
 a sexual nature.
 If you feel you are being harassed in any way by
 another employee *** you should make your feelings
 known immediately. You may report harassment to your
 supervisor[.] 
 Rest assured that you will not be penalized in any
 way for reporting harassment concerning yourself or any
 other person. The Company will take immediate action to
 punish anyone who seeks reprisal as a consequence of
 harassment being reported
 All harassment complaints will be thoroughly
 investigated, and when appropriate, corrective action
 including disciplinary action, will be taken. We consider
 harassment to be a major offense which can result in
 suspension or discharge of an offender. *** 
 Above is the policy of Bridgford Foods Corporation
 and its subsidiaries. *** " (Emphasis added.) 
Plaintiff averred in his complaint that defendant's policy constituted a contract
between the parties.
 Whether a contract exists is a question of law. See Robinson v. Christopher
Greater Area Rural Health Planning Corp., 207 Ill. App. 3d 1030, 566 N.E.2d 768
(1991). A court may interpret the contract as a matter of law and make an
appropriate ruling, including a dismissal under section 2-619 of the Code of Civil
Procedure (735 ILCS 5/2-619 (West 1994)). See Ragus Co. v. City of Chicago, 257 Ill.
App. 3d 308, 628 N.E.2d 999 (1993). 
 An employee handbook or other policy statement creates enforceable
contractual rights provided the following requirements are satisfied: (1) the language
of the policy statement must contain a promise clear enough that an employee would
reasonably believe that an offer was made; (2) the statement must be disseminated
to the employee in such a manner that the employee is aware of its contents and
reasonably believes it to be an offer; and (3) the employee must accept the offer by
commencing or continuing to work after learning of the policy statement. Duldulao
v. St. Mary of Nazareth Hospital Center, 115 Ill. 2d 482, 489, 505 N.E.2d 314 (1987). 
The efficacy of plaintiff's appeal rests on the first requirement, i.e., whether the April
19 memorandum, and the employee manual contained a promise clear enough that
plaintiff would reasonably believe that it should report incidents of harassment
without being penalized in any way. 
 After carefully reviewing the memorandum, we conclude that it stated more
than just a general policy or employer expectations. The memorandum pronounces
that defendant would not tolerate any harassment, including sexual harassment of
any kind. It further stated that if an employee is being harassed, he should make his
feelings known "immediately." Defendant specifically states that an employee "will
not be penalized in any way for reporting harassment" and that defendant will take
immediate corrective action after a thorough investigation. Defendant emphatically
states that harassment is a major offense that can result in suspension or discharge
of an offender. Clearly, this states a promise by defendant to end any harassment
employees may experience. Defendant relies on the employees to report any incidents
of harassment. The April 19 memorandum was distributed to all the employees. We
believe it is reasonable for plaintiff to find an offer was made, an offer which was
accepted. Plaintiff, relying on defendant's policy statement, carried out his
contractual obligations by reporting incidents of sexual harassment. Accordingly, we
find that sexual harassment policy was a contractual right of plaintiff under
Duldulao. That said, we must now turn to the question of whether such a breach of
contract claim is precluded by the Act.
 While both the contractual and retaliatory discharge claims may rise from the
same core of operative fact, a breach of contract claim is a separate and distinct claim
from that of retaliatory discharge, whose genesis is in tort law. We can read nothing
in the Act or caselaw which suggest that it was meant to preempt contract law. 
Accordingly, we believe the circuit court erred in dismissing count II of plaintiff's
claim. In so holding, we wish to emphasize that our decision here is anchored on the
fact that defendant had a very explicit policy statement which rose to the level of
contract under Duldulao. It still remains to be determined by the trier-of-fact
whether defendant actually breached the contract by discharging plaintiff.
 In light of our disposition of the last issue, we need not address plaintiff's
promissory estoppel claim since a contract was found.
 For the foregoing reasons, we affirm in part, and reverse in part the judgment
of the circuit court of Cook County and remand for further proceedings not
inconsistent with the views contained herein. 
 Affirmed in part; reversed in part and remanded for further proceedings. 
 CERDA and GALLAGHER, JJ., concur.