LINDA AHLGREN, Plaintiff-Appellant, v. BLUE GOOSE SUPERMARKET, INC., Defendant-Appellee (David Lencioni, Defendant).

Second District   No. 2—93—0869

Opinion filed August 23, 1994.

Jerome S. Feder, of Chicago, for appellant.

Theodore L. Kuzniar and Julie A. Coleman, both of Bochte & Kuzniar, of St. Charles, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Linda Ahlgren, filed a two-count second amended complaint in the circuit court of Kane County, against defendants, the Blue Goose Supermarket, Inc. (Blue Goose), and David Lencioni, alleging wrongful termination and breach of contract. Lencioni was dismissed with prejudice as a defendant, and the circuit court granted the remaining defendant's motion for summary judgment on the

breach of contract claim. Following the trial court's denial of plaintiff's motion for a Supreme Court Rule 304(a) finding (see 134 Ill. 2d R. 304(a)) and this court's dismissal of plaintiff's first appeal for lack of jurisdiction, plaintiff voluntarily dismissed her wrongful termination claim. Plaintiff now brings a timely- appeal from the circuit court's order granting summary judgment with prejudice in favor of defendant on the breach of contract claim.

The sole issue on review is whether an employee handbook and interoffice memorandum distributed to plaintiff contemporaneously with her promotion from cashier to manager modified her employment status as an at-will employee to one who could be terminated only for cause.

Plaintiff's second amended complaint alleged as follows. Plaintiff was an employee of the Blue Goose Supermarket, Inc., from approximately September 1979 until July 28, 1990. On or about October 6, 1989, plaintiff was promoted from cashier to customer service manager, a salaried position.

Before October 1989, Blue Goose's employment policies were documented in the "Blue Goose Supermarket Employee Manual." The manual contained no job classifications, job descriptions, job responsibilities, or job performance standards.

Sometime after David Lencioni assumed the duties of president and chief executive officer of Blue Goose, he initiated a program for evaluating and defining Blue Goose's organizational structure. On or about October 6, 1989, Lencioni distributed a memorandum to employees describing the company's expectations regarding organizational structure. The memorandum's stated goal was to "produce clear, concise, common sense [sic] statements of store policy, job descriptions and responsibilities, lines of communication, a chain of command, and procedures and goals." The memorandum further advised employees that plaintiff was to assume the duties of customer service manager. It further stated that "[u]ntil further notice, the Customer Service Manager will report to the President."

Contemporaneous with her promotion, plaintiff was also provided with a new employee manual, a copy of which was attached to her complaint. The introduction page describes it as an informational package "given to you as a courtesy of your Blue Goose Super Market Management Team." It further stated that "[y]our receipt of it justifies our belief of your understanding and acceptance of these policies." According to plaintiff's complaint, a copy of the manual was distributed to all managers and employees. Generally, the new manual provided job descriptions and functions, performance evaluation objectives, and evaluation standards for the customer ser-

vice department. The customer service evaluation standards addressed such areas as customer relations, general store knowledge, accuracy, interpersonal relations, and dependability. The evaluation standards for each particular area of concern are generally broken down into three categories: (1) needs improvement; (2) meets standards; and (3) "excels [*sic*] standards." Within each category is a brief enumeration of company expectations relative to a particular area. For example, under customer relations, an employee who, among other things, demonstrates positive eye contact, facial expression, courtesy towards customers, and does not delay a customer through social conversations meets the standard for friendliness and politeness.

The manual contains no provisions discussing length of employment, the nature of the employment relationship, or tenure. Additionally, there are no general or specific procedures for discipline or discharge of employees who fail to meet company standards, and no employee grievance procedures are outlined. The manual contains no contractual disclaimer.

In her complaint, plaintiff alleged, in part, that the delivery of the manual to her "specifically offered [her] the opportunity to accept a newly established position, and to work in that position within a specifically defined framework of criteria for job security and promotion." Additionally, her complaint alleged that the delivery of the manual, combined with:

> "the circumstances surrounding the delivery thereof, \*\*\* [was] reasonably accepted by Plaintiff as a unilateral offer by BLUE GOOSE of a contract of employment in a new position of Customer Service Manager and that absent some more specifically defined limitation on the duration of that employment Plaintiff could reasonably anticipate continued employment in the position offered during good behavior and competent performance."

Plaintiff alleged further that her undertaking the duties and responsibilities of customer service manager constituted her acceptance of the defendants' "unilateral offer" and provided the consideration necessary for the formation of a contract of employment.

On July 6, 1990, Lencioni advised plaintiff, "without benefit of prior oral or written advice," that she was being demoted, effective that day, to an hourly wage position as cashier. Plaintiff alleged that the demotion to cashier was tantamount to a constructive discharge in violation of the terms of her employment contract with Blue Goose and that she was entitled to compensatory and punitive damages.

Defendant moved for summary judgment, contending that plaintiff was an at-will employee. Defendant maintained that the

manual did not contain a promise clear enough so that plaintiff would reasonably believe it to be an offer modifying her employment status. Defendant argued further that although the manual contained performance-related guidelines, it did not contain any provisions related to discipline or termination. The manual therefore created no contractual relationship between plaintiff and defendant, and defendant was free to terminate or demote plaintiff at will. Defendant further maintained, in the alternative, that even if a contract were formed, plaintiff's complaint failed to allege how defendant breached that contract.

In her response, plaintiff maintained that the employee manual conveyed a clear promise which she could reasonably believe "was a unilateral offer of a contract of employment during good behavior and competent performance." Attached to plaintiff's response was her affidavit. Plaintiff averred, in part, that at some time prior to October 6, 1989, she was told that she was being promoted to customer service manager. It was a position with a complete job description and performance goals, and as long she met the performance criteria, she would have employment at Blue Goose. Plaintiff's affidavit did not identify who made these statements to her.

Plaintiff further averred that when she received the October 6, 1989, memorandum and the employee manual, she asked Lencioni if the documents were what he told her earlier regarding job descriptions, performance requirements, disciplinary procedures, and evaluation standards, and whether all of these were being offered as an inducement for her to accept a new position. Lencioni responded affirmatively. At this juncture, we note that plaintiff raised no issue in the trial court related to whether the conversations averred in her affidavit were tantamount to an oral contract.

Following a hearing, the circuit court entered a written order granting defendant's motion for summary judgment. The court determined that the employee manual constituted little more than a statement of general policy, employer expectations, and job descriptions. There were no provisions promising job security, employee disciplinary procedures, duration or term of employment, or rights upon termination. Additionally, defendant was not obligated to provide notice, undertake an investigation, or conduct a hearing related to demotion or termination. The document offered no expectations that termination would be restricted to "reasons, serious reasons, or even good cause." The court further determined that even if the document were construed as amending plaintiff's original job offer, nothing in that document showed that the parties contracted for terms that in any way altered the at-will status of the plaintiff "vis-a-vis termination." Plaintiff appeals.

The thrust of plaintiff's appeal rests on her contention that the October 6 memorandum and certain statements contained in the employee handbook established a clear and unambiguous offer for a unilateral contract of employment terminable only for cause. Specifically, with respect to the employee manual, plaintiff argues that the second and third paragraphs of the introduction page and other statements in the performance evaluation section constituted clear promises that an employee would reasonably believe that discharge or discipline would only be for cause. The introduction page provides, in its entirety:

"This informational packet is given to you as a courtesy of your Blue Goose Super Market Management Team.

In this packet are your Job Level Classification Descriptions, Job Function Descriptions, Performance Evaluation Objectives, and Evaluation Standards for your Department. A current copy of the Dress Code has also been included.

Please read and keep this information. We will be adding to it as your employment continues. Your receipt of it justifies our belief of your understanding and acceptance of these policies."

In her brief, plaintiff stresses that the use of the terms "your understanding and acceptance" when considered in conjunction with certain performance objectives enumerated in the manual and the evaluation standards constituted a clear promise to modify her employment status. Of the 10 performance objectives enumerated in the manual, plaintiff focuses on three: (1) to keep employees informed of what is expected of them and how well they are performing; (2) to serve as a guide to promotions, layoffs, and other personnel action; and (3) to check on the reasonableness of established performance standards. As noted above, the evaluation standards are hierarchical categorical enumerations describing desirable job performance characteristics.

In deciding plaintiff's appeal, we are guided by familiar principles governing the resolution of motions for summary judgment. Summary judgment is properly entered only when the resolution of a case hinges on a question of law and the moving party's right to judgment is free and clear from doubt. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410.) In determining the propriety of a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. (*Hoover*, 155 Ill. 2d at 410-11; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 131-32.) The purpose of summary judgment is to determine the exis-

tence of any genuine issues of material fact (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), and if such issues exist, summary judgment must be denied (*Hoover*, 155 Ill. 2d at 411). The construction of terms of a contract presents only a question of law and therefore is appropriate for summary judgment. (*Forest Preserve District v. Brookwood Land Venture* (1992), 229 Ill. App. 3d 978, 981.) As a court reviewing the propriety of an order granting summary judgment, we conduct a *de novo* review. *Outboard Marine*, 154 Ill. 2d at 102; *Old Kent Bank-St. Charles N.A. v. Surwood Corp.* (1994), 256 Ill. App. 3d 221, 227.

■ It is well established in Illinois that an employer-employee relationship without a fixed duration is terminable at will by either party. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 189.) As a rule of construction, the employment at will rule mandates only a presumption that hiring without a fixed term is at will. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489.) That presumption can be overcome by demonstrating that the parties contracted otherwise. (*Duldulao*, 115 Ill. 2d at 489.) An employee handbook or other policy statement creates enforceable contractual rights provided the following requirements are satisfied: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer was made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. (*Duldulao*, 115 Ill. 2d at 490.) The efficacy of plaintiff's appeal rests on the first requirement, *i.e.*, whether the October 6 memorandum and statements in the employee manual contained a promise clear enough that plaintiff would reasonably believe that defendant made an offer to modify her status as an at-will employee to one terminable only for just cause.

■ Although plaintiff argues that, when viewed together, statements made to her by Lencioni, the October 6 memorandum, and the employee manual collectively constituted a promise clear enough that she would reasonably believe that defendant made an offer to modify her employment status, the thrust of her argument focuses on the written documents. After reviewing the October 6 memorandum and the employee manual in its entirety, we conclude that neither of these documents, when viewed separately or together, created an enforceable contractual right modifying plaintiff's at-will employment status to one terminable only for cause. The October 6, 1989, memorandum is nothing more than an informational statement

about organizational restructuring and an announcement that certain positions were created with the appointment of particular employees, including plaintiff, to those positions. The memorandum contains language such as "we have begun a process of evaluating," "[w]hat we expect to accomplish," and "as you might guess, [this] is a big project, [sic] and will take some time to complete." We find that nothing contained therein created a promise clear enough that an employee would believe an offer was being made to modify his or her employment status to one terminable only for cause.

Likewise, neither the introduction page nor the evaluation objectives or standards can be construed as creating a promise clear enough that an employee would believe an offer was being made to modify his or her employment status in exchange for his or her continued performance. The first paragraph of the introduction page explicitly states the entire document is an "informational packet." In quoting the introduction page in her brief, plaintiff seems to have omitted this portion. The second paragraph is nothing more than a table of contents in narrative form.

Considering the third paragraph, even if we were to assume that an employment contract existed based on the language "[y]our receipt of [the informational packet] justifies our belief of your understanding and acceptance of these policies," there is no provision in the manual containing a promise clear enough that an employee would believe an offer was being made to modify his or her employment status in exchange for continued employment. Initially, we note that the absence of a specific duration of employment is not alone dispositive. Viewing the manual in its entirety, however, we are inclined to agree with the trial court that the employee manual constituted little more than a statement of general policy, employer expectations, and job descriptions. "An employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer." (*Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622, 626.) Moreover, there are no provisions concerning job security, employee disciplinary procedures, rights upon termination, or an employee review system. Defendant was not obligated to provide notice, undertake an investigation, or conduct a hearing related to discipline or dismissal. As one court has held, articulated procedures are a fundamental and necessary part of an employment contract which provides for an employee's discharge or dismissal only upon just cause. (*Tolbert v. St. Francis Extended Care Center* (1989), 189 Ill. App. 3d 503, 507 (policy manual contained no procedures "to be followed in the event that an employer chooses to discipline or dismiss an employee on the ground that the employee's conduct falls below

the standards stated in the manual").) Accordingly, in the absence of such procedures, an employment manual would fail to rise to the level of an enforceable employment contract. Although we need not reach the precise question of whether the absence of articulated procedures would be solely determinative, it is nonetheless a strong factor weighing in favor of finding that a contract of employment terminable only for cause does not exist. *Cf. Tolbert*, 189 Ill. App. 3d at 507; *Bjorn v. Associated Regional & University Pathologists, Inc.* (1990), 208 Ill. App. 3d 505, 508.

■ Plaintiff maintains, however, that the lack of specific procedures for discharge does not preclude a determination that she could be discharged only for cause. Her reliance on *Duldulao* (115 Ill. 2d 482), *Pine River* (333 N.W.2d 622), the case relied on in *Duldulao*, and *Berube v. Fashion Centre, Ltd.* (Utah 1989), 771 P.2d 1033, offers no support for her position. None of plaintiff's cited cases hold that an employee had an enforceable contractual right to termination only for cause even in the absence of specific substantive and procedural guidelines. (See generally *Duldulao*, 115 Ill. 2d at 490-91 (specific language in manual phrased in imperative terms entitled employee to progressive discipline); *Berube*, 771 P.2d at 1048, 1049-50 (express terms in written disciplinary policy, employer's conduct of formal review process, and assurances from superiors created question of fact regarding whether employee was terminable only for cause); *Pine River*, 333 N.W.2d at 630 (explicit rule-violation procedure in employee manual under section titled "Disciplinary Policy" created enforceable contractual right restricting employer's right to terminate at will).) Accordingly, we find plaintiff's argument unsupported and without merit.

■ Moreover, we find plaintiff's affidavit insufficient to support her claim that she would only be dismissed or disciplined for cause. In paragraph 6 of her affidavit, plaintiff averred that she "was told" that if she met the criteria outlined for herself and others she would have employment at Blue Goose. Unlike other paragraphs of her affidavit in which plaintiff specifically identifies the declarant, plaintiff fails in paragraph 6 to attribute this alleged promise to Lencioni or any other person in authority. It is unnecessary to resolve whether the averment in paragraph 6 constituted a promise clear enough to constitute an offer. Even if we were to assume that it was an offer, plaintiff did not identify who made the statement and in what capacity that individual was acting. A corporation acts through its officers and directors and is bound by their actions when performed within the scope of their authority. (*In re Possession & Control of Knight* (1965), 60 Ill. App. 2d 457, 460.) Paragraph 6 of plaintiff's affi-

davit does not aver facts sufficient to establish that an officer or director acting within the scope of his or her authority entered into an obligation binding the corporation. Accordingly, paragraph 6 of plaintiff's affidavit is insufficient to support her theory of recovery.

In paragraph 7, plaintiff averred that when Lencioni distributed the memorandum and employee manual to her, she asked "whether all of these were being offered as an inducement for and other [sic] to accept their new positions, and he said yes." As a matter of law, we find no evidence of a clear promise, explicit or implicit, in this statement to support an objectively reasonable belief that an employee could be disciplined or dismissed only for cause.

We conclude therefore that the October 6 memorandum, employee manual, and oral statements, which plaintiff averred were made by Lencioni, when considered independently or together, do not constitute a promise clear enough from which plaintiff could reasonably believe that her at-will employment status was modified to one terminable only for cause. Accordingly, the circuit court properly granted summary judgment in favor of defendant on count II of plaintiff's second amended complaint.

For the foregoing reasons, the order of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and PECCARELLI, JJ., concur.