97 F.3d 1454
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daniel MOSES, Plaintiff-Appellant,
v.
CITY OF EVANSTON, Defendant-Appellee.
 No. 95-3712.
 United States Court of Appeals, Seventh Circuit.
 Argued June 11, 1996.
Decided Sept. 20, 1996.
 
 Before CUDAHY, KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Daniel Moses was a Commander in the Evanston, Illinois, police department. As a result of an incident in which he was accused of "body-slamming" a thirteen-year-old boy against a police car, the department suspended him for thirty days without pay. Moses then sued, claiming that the procedures the department used violated the Due Process Clause of the Fourteenth Amendment, because he was not given a full evidentiary hearing and because his decisionmakers were biased. The district court granted the City's motion for summary judgment, finding that the procedures were constitutionally adequate. We affirm.
 
 
 2
 The incident itself occurred when Moses and his partner, Lieutenant Gresham, were out on another matter. They stopped at a store, where Moses wanted to buy some cigarettes. As the unmarked squad car pulled into a parking lot adjacent to the store, a small group of boys crossed in front of it. One of the boys threw something at the car. (The boy said it was just a leaf, but the dispute is immaterial for our purposes.) Moses, dressed in plainclothes, got out and approached the boy, asking him to approach the squad car. Moses claimed that he identified himself as a police officer, but the boy denied this. The boy then took a swing at Moses. Moses responded by seizing the boy by the arm with one hand and grabbing his throat with the other. He swung the boy around and threw him (or placed him, as Moses put it) onto the hood of the car. He then apologized to the boy and allowed him to leave. Moses did not report the incident, because he considered it minor and believed that it had been resolved at the scene.
 
 
 3
 The latter supposition proved to be untrue; the boy filed a complaint on August 16, 1993, with the Evanston police department, asserting that Moses had used excessive force during the encounter. The investigation was under the supervision of Acting Police Chief Frank Kaminski, who assigned Sergeant Page to be the investigator. Page interviewed the boy and the other witnesses during August and September. On September 2, Moses received a "notice of investigation," which identified the accuser by name, furnished the date, time, and place of the occurrence, cited the relevant Police Department rules, and summarized the complaint as follows:
 
 
 4
 Complainant alleges that he was grabbed by the neck by you because you thought he threw something at the car you were a passenger in. He alleges that you then picked him up by the neck and lifted him into the air and slammed him onto the hood of a car. You also didn't make a police report regarding this incident.
 
 
 5
 A few days later, Kaminski placed a memorandum in the case file reporting that he had heard Moses boasting about having "body-slammed" a youth. Page interviewed Moses on September 23; Moses declined to have counsel present on that occasion.
 
 
 6
 Following the City's established disciplinary procedures for officers above the rank of captain, the Assistant City Manager, the Director of Personnel, a member of the Law Department, and Acting Chief Kaminski held a "Due Cause" meeting on October 11, 1993. The purpose of the meeting was to consider the results of the internal investigation and to recommend the maximum amount of discipline that might be imposed. The result was a decision to go forward with the complaint and a recommendation of a 30-day suspension from the force. Moses, the complaining party, and the Evanston City Council were all informed of this decision.
 
 
 7
 The next step was a "Pre-Disciplinary Hearing," which was held on November 9. Page presided over the meeting, which also included Moses and his lawyer, Gresham, a member of the Evanston Law Department, Chief of Police Gerald Cooper, another police officer, and Kaminski. Moses was informed of the result of the "Due Cause" meeting and was allowed to tell his side of the story, both personally and through witnesses. At that time, however, he did not know about the memorandum to the file Kaminski had written, nor about its allegation of the "body-slamming" boast. Furthermore, the City refused Moses' request to furnish him copies of the witness statements it had collected, saying "[t]his is not a hearing. This is a pre-disciplinary meeting at which point he [Moses] has the opportunity to give his side of the story." Whatever it may have been called, at the conclusion of the "Pre-Disciplinary Hearing" Chief Cooper decided to suspend Moses for thirty days without pay.
 
 
 8
 Moses then sued for violations of his Fourteenth Amendment right to due process. The complaint purported to be one directly under the Fourteenth Amendment, rather than through 42 U.S.C. § 1983. His "Civil Cover Sheet," however, cited the action as one under § 1983. We agree with the City that there is no cause of action directly under the Fourteenth Amendment when § 1983 is available. See Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 732 n. 3 (7th Cir.1994); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir.1992), cert. denied, 506 U.S. 1081 (1993); Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir.1979) (en banc) (per curiam), cert. denied sub nom. Turpin v. City of West Haven, 449 U.S. 1016 (1980). Nevertheless, like the district court we are willing to assume arguendo that Moses adequately raised the § 1983 theory and decide the case on that basis.
 
 
 9
 Our review of the district court's judgment is de novo, taking all the facts and inferences in the light most favorable to the non-moving party. Smith v. Shawnee Library System, 60 F.3d 317, 320 (7th Cir.1995); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In this case, however, the key question is a legal one: did the undisputed procedures that the City followed satisfy due process requirements? In approaching the case this way, we give the benefit of the doubt to Moses on the question whether his position was sufficiently distinct from "employment at will" to give rise to a protected property interest, which is a prerequisite to a § 1983 case. See Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir.1996); Wallace v. Tilley, 41 F.3d 296, 299 (7th Cir.1994). We were told at oral argument that the City could reassign a Commander to a lower position at will, and that Evanston has a modified civil service system that protects officers below the rank of captain. We therefore assume for the sake of argument that a genuine issue of fact exists on the nature of the position, which would preclude summary judgment on this ground.
 
 
 10
 The fundamental requirements of due process are notice and an opportunity to be heard, at a meaningful time and in a meaningful manner. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985); Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Cholewin v. City of Evanston, 899 F.2d 687, 689 (7th Cir.1990). It is not always necessary to furnish a full trial-type hearing prior to the adverse administrative action. Instead, a more flexible approach is called for. In cases involving public employee dismissal proceedings, this court has stated that they are entitled to "oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story prior to their discharge." McCammon v. Indiana Dept. of Financial Inst., 973 F.2d 1348, 1350 (7th Cir.1992), cert. denied, 507 U.S. 920 (1993).
 
 
 11
 In this case, Moses received notice of the investigation on September 2, which informed him about the incident and the alleged conduct of his that violated the rules. He also had notice of the charges against him before the Pre-Disciplinary Hearing, through the interview Page conducted on September 23. At the hearing itself, he received an explanation of the City's evidence, and he indisputably had an opportunity to present his side of the story. The flaws in the procedure, as he sees it, were more subtle: he did not receive the requested copies of the witness statements in the City's possession, and Acting Chief Kaminski did not reveal the memorandum in which he recalled Moses boasting about "body-slamming" someone. The City agrees with this factual description and takes the position that Moses was not entitled to receive this information.
 
 
 12
 Moses' procedural rights were not violated in these circumstances. This is not a case like Swank v. Smart, 898 F.2d 1247 (7th Cir.1990), in which the police officer had no opportunity to respond to a statement containing the police chief's assessment of the harm that had been caused by his conduct. The respondent officer has the right to know about additional charges or evidence pertinent to the remedy that might be imposed. Here, Moses knew the nature of the charges. He knew that the dispute was whether or not he had used excessive force on the boy when he put him on the hood of the car. According to the boy and his witnesses, Moses knew, the answer was yes; Moses himself denied it, both in the interview and at the hearing. We see nothing wrong with the City's decision not to turn over the original statements themselves, as long as Moses was fully informed of their content.
 
 
 13
 Moses' complaint about Kaminski's memorandum is more troubling, but in the end we conclude that any error that might have been made in refusing to disclose its existence and the substance of the comment was harmless. Moses certainly knew that Kaminski was aware of the charges against him: Kaminski was supervising the investigation. The term "body-slamming" may be colorful, but it is only a way of describing the action of which Moses was accused, and Moses already knew that he was accused of "slamming" the boy onto the hood of the car. Moses may not have recalled making the boast that Kaminski attributed to him, but he had a full opportunity to tell his own story at the Pre-Disciplinary Hearing. Given the array of witnesses against him, his credibility was already a central issue for the decisionmaker. It would have been preferable for the City to come forward with something as significant as an admission, which Moses' alleged statement to Kaminski appeared to be. Nevertheless, if due process is satisfied by written notice plus an opportunity to respond in writing, as we held in Cholewin, it is satisfied by written notice plus a hearing at which all questions can be aired. See also Smith v. Town of Eaton, 910 F.2d 1469, 1472 (7th Cir.1990), cert. denied, 499 U.S. 962 (1991).
 
 
 14
 Moses also claims that his hearing was defective because it was conducted by Page, in the presence of the ultimate decisionmaker, Chief Cooper. There is no indication that either of them were biased, nor is there any indication that Cooper was merely a cat's paw for Kaminski. Moreover, the fact the one of the decisionmakers was involved with the investigatory process does not, in itself, call the fairness of the hearing into question. See, e.g., Withrow v. Larkin, 421 U.S. 35, 53-54 (1975); Bakalis v. Golembeski, 35 F.3d 318, 326 (7th Cir.1994); Panozzo v. Rhoads, 905 F.2d 135, 140 (7th Cir.1990).
 
 
 15
 Last, Moses points out that officers at or below the rank of captain receive greater procedural protections from the City than those above that rank, as he was. The question, however, is whether the process used in his case was constitutionally adequate. If so, it makes no difference whether the City chose to give more elaborate procedural protections to others as a matter of local law. See Panozzo v. Rhoads, 905 F.2d 135, 140 (7th Cir.1990); Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir.1985) (en banc), cert. denied, 476 U.S. 1108 (1986). In this case, the City's procedures did not violate the Fourteenth Amendment. We therefore AFFIRM the judgment of the district court.