124 F.3d 206
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jason WILK, Deannine Harrison, and Ortoneda R. Louis,
individually, and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
Janet McDONOUGH, Joseph Pecoraro, and Chicago Park District,
Defendants-Appellees.
 No. 96-3399.
 United States Court of Appeals, Seventh Circuit.
 Argued: April 10, 1997.
Decided: July 10, 1997.
 
 Appeal from the United District Court, Northern District of Illinois, Eastern Division, No. 96 C 768; Harry D. Leinenweber, Judge.
 RIPPLE, MANION, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 The plaintiffs, three summer lifeguards who had been employed by the Chicago Park District ("CPD"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging procedural due process violations stemming from the CPD's reemployment practices for the summer lifeguards. The plaintiffs also alleged numerous state law claims. The defendants, the CPD and two of its employees who evaluated the lifeguards' performance, filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the defendants' motion; it dismissed the federal claims with prejudice and the state claims without prejudice. This appeal followed.
 
 
 2
 * During the summer of 1994, the plaintiffs worked as lifeguards for the CPD, as they had for at least four previous summers. They had received regular performance evaluations during that summer, as they had in previous summers. Each performance evaluation was reviewed and signed by the CPD evaluator (Defendant Janet McDonough), the lifeguard (one of the plaintiffs) and a reviewer (Defendant Joseph Pecoraro). A lifeguard whose performance over the season was evaluated above the specified score of 1.6 (on a scoring range of 0-4) was sent an application for reemployment the following spring. However, if the employee did not receive a minimum total evaluation score higher than 1.6, he or she would not be rehired. Finally, a lifeguard who applied for reemployment was given a requalification test each year.
 
 
 3
 In 1994, after the plaintiffs had reviewed and signed their performance evaluations, the evaluations were amended without their knowledge and their overall scores were lowered. Defendant McDonough added the following statement to each of the plaintiffs' performance evaluations:
 
 
 4
 [Employee] failed to follow specific instructions given by [C]aptain Knibbs and McDonough on Labor Day. Boathouse was left dirty, lockers were not cleaned out, food and beer bottles littered the boathouse steps and beach. Remnants of a bonfire were still smoldering at 8:30 AM on 9/6/94 presenting a hazard to public safety.
 
 
 5
 R.1 p 44. The plaintiffs were not rehired for the next summer season because of their low performance evaluations the previous summer.
 
 
 6
 Consequently, the plaintiffs filed a five-count complaint. In counts I and II, they alleged, pursuant to 42 U.S.C. § 1983, that they had a protectable property interest in their continued future employment as lifeguards, as interest created by the CPD's use of performance evaluations, and that the defendants violated their right to due process when their performance evaluations were altered without notice or hearing. The remainder of the counts was based on a state law. Count III was a claim of defamation against Defendant McDonough for adding the "false, libelous, defamatory and slanderous" statement to their performance evaluations. R.1 p 44. In Count IV, the plaintiffs alleged that, as a direct result of Defendant McDonough's actions, they were not rehired. They claimed that McDonough thus interfered with their prospective economic advantage. Count V was a claim of intentional infliction of emotional distress against McDonough.
 
 
 7
 On August 30, 1996, in open court, the district court dismissed the plaintiffs' federal claims with prejudice and the state law claims without prejudice. The court found that the plaintiffs, who did not dispute that they were at-will employees, did not have a protected property interest in their future employment because of their at-will status. The court noted that it was within the right of the employer to offer reemployment to its competent employees and to choose not to rehire the plaintiffs after evaluating their performance. It further commented: "If evaluating the performance of an at-will employee creates tenure, at-will employment would be effectively ended." R.27 at 4; see R.22, R.23 (entries of final order granting motion to dismiss).
 
 II
 
 8
 "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" Conley v. Gibson, 355 U.S. 41, 45-46 (1957). We review a district court's dismissal of a complaint de novo, accepting the plaintiffs' well-pleaded allegations as true, Harris v. City of Auburn, 27 F.3d 1284, 1285 (7th Cir.1994), and drawing all reasonable inferences from those facts in favor of the plaintiffs, Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir.1996).
 
 
 9
 The plaintiffs claim that they have a cognizable property right to reemployment and that the deprivation of that right constituted a denial of due process. See Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir.1993). As a threshold matter, they must demonstrate that they possess a constitutionally protected property interest in their positions as lifeguards. That property interest is created "by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). As we explained in Johnson v. City of Fort Wayne, 91 F.3d 922 (7th Cir.1996):
 
 
 10
 A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract--those "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."
 
 
 11
 Id. at 943 (quoting Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir.1996) (citations omitted)). A property interest may therefore be established "by a showing of a de facto re-employment or tenure system such as where there are 'mutually explicit understandings' which include a promise of continued employment." Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 589 (7th Cir.1992) (quoting Perry v. Sindermann 408 U.S. 593, 601 (1972)).
 
 
 12
 Because the plaintiffs were employed by the Chicago Park District, we examine Illinois law to determine whether they had a cognizable property interest in their future employment. See Border, 75 F.3d at 273. The presumption in Illinois is that employment is at-will, id. at 274, and the plaintiffs agree that their job as seasonal lifeguards is at-will employment.[1] Generally, at-will employees do not have a protected property right in continued employment. Harris, 27 F.3d at 1286 (citing cases); Mitchell v. Glover, 996 F.2d 164, 167 (7th Cir.1993). Unless the plaintiffs can point to something that alters the character of their at-will employment status, such as a state statute, regulation or specific contractual right, they have no constitutionally protected property right on which to base a valid due process claim. See Harris, 27 F.3d at 1286. In Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 318 (Ill.1987), the Supreme Court of Illinois made clear that the presumption of the state's "employment-at-will" rule "can be overcome by demonstrating that the parties contracted otherwise."
 
 
 13
 The lifeguards claim that the performance evaluations constituted an implied contract creating for them a property interest in their reemployment in subsequent summers.[2] In Duldulao, Illinois' highest court held that enforceable contract rights can be created by an employee handbook or other policy statement as long as the traditional requirements for contract formation are present. Id. The court enumerated those requirements:
 
 
 14
 First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.
 
 
 15
 Id.
 
 
 16
 The plaintiffs contend that the CPD's performance evaluations are policy statements that meet those requirements: They contain a sufficiently clear promise that an offer of continued and prospective employment was made and accepted. Our examination of the performance evaluation report form leads to the contrary conclusion. The form lists categories to be graded (attitude, personal relations, work habits, work product and abilities) and has columns in which grades are to be written for each bi-weekly evaluation. R.11, Exs.C, D. An employee is graded by a number from 0 (unacceptable) to 4 (outstanding). A score of 0 to 1.6 is designated "unacceptable." There is a box for "final evaluation," in which the final score for the season is entered, and a box for "narrative" in which comments may be written. There is not the slightest suggestion of a promise that an employee had a right to reemployment; nor is there any offer of future employment. Without language in that document of a promise, in terms clear enough that an employee would believe that an offer was made, the first condition of Duldulao is not met. See Border, 75 F.3d at 274; Lashbrook v. Oerkfitz, 65 F.3d 1339, 1347 (7th Cir.1995) (dismissal of complaint affirmed because employee manual did not contain clear promise of continued employment); Krecek v. Board of Police Comm'rs, 646 N.E.2d 1314, 1317-18 (Ill.App.Ct.1995) (Duldulao first prong not satisfied because no clearcut promise was made).
 
 
 17
 In their brief to our court, however, the plaintiffs also assert that their property interest was created under the "performance evaluation policy," which includes the CPD's use of performance evaluations and its rehiring of lifeguards routinely the next summer.[3] This policy, they submit, gave the plaintiffs a legitimate right to continued seasonal employment. In this regard, the only evidence available in the record to support such a claim of an enforceable contract right is the form given to supervisors that sets forth the "procedures for filling out evaluation forms." The procedures form presents step-by-step the method for evaluating an employee. It expressly allows the amendment of a performance evaluation like the one that Defendant McDonough made in this case:
 
 
 18
 NOTE: If an employee has a problem or does something outstanding after the evaluation has been turned in. The evaluation can be changed either up or down with a dated explanation by the immediate supervisor, subject to approval by a supervisor or the General Supervisor of Beaches & Pools.
 
 
 19
 R.11, Ex.E. The procedures form also states the minimum requirements for consideration for future employment:
 
 
 20
 If the employee's evaluation is unacceptable 1.6 or less the person should be refused for the next season. If there was a problem with the employee but not serious enough to refuse employment the next year it should be noted on the evaluation form. This is so that the supervisors can make adjustments the next year in assignments.
 
 
 21
 Id. The form directs the refusal of an application from an individual whose performance falls below the minimum score:
 
 
 22
 If the employee[']s evaluation is 1.6 or below, the application for employment for the next year will not be accepted.
 
 
 23
 Id. However, there is no explicit statement that an individual who scores above 1.6 will be rehired. In fact, the most such a person can expect, if his score is above 1.6, is an employment application and, if accepted, an opportunity to take a test to requalify for the position.
 
 
 24
 It is clear to us that no contract was created by the performance evaluations or by the implementation procedures used to evaluate CPD employees. Neither form presents a policy statement concerning employment criteria; neither contains any offer of future employment. A favorable performance evaluation is merely a condition precedent to qualifying for an application for future summer employment; it is not an offer of employment. Duldulao requires that, if the forms are to be enforced as an implied contract, the language in them must contain a sufficiently clear promise of an offer. Here there is no language, express or implied, that can be construed as a promise of continued future employment. We conclude that no employee reading either form could reasonably believe that an offer had been made. See Border, 75 F.3d at 274 (concluding that nothing in handbook was a contractual promise); Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 590 (7th Cir.1992) (concluding there were no identified criteria for reappointment in handbooks).
 
 
 25
 The plaintiffs are also unable to satisfy Duldulao's second requirement that the statement "be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer." 505 N.E.2d at 314. The performance evaluations, which were disseminated to the plaintiffs, contain no promise of future employment. The procedures form was disseminated only to supervisors, not to all employees. Therefore there was no justification for nonsupervisory employees to consider that information to be an offer to them, even had there been such an offer. See Gaiser v. Village of Skokie, 648 N.E.2d 205, 210-11 (Ill.App.Ct.1995) (concluding that, because personnel manual was never disseminated to plaintiff, it could not form the basis for a contract). In sum, nothing in the performance evaluation form or its implementation procedures form creates an implied contract for future employment.[4]
 
 
 26
 As a final submission for our consideration, the plaintiffs claim that the performance evaluations are policy statements because they limit the CPD's discretion to bar from future employment only those employees who do not obtain a minimum evaluation score. Once again we must disagree. The performance evaluations state the minimum level of acceptable performance, and the procedures form states that the CPD will not accept the applications of employees whose evaluations were 1.6 or less. This establishment of a baseline performance level does not bar only employees scoring 1.6 or less, as the plaintiffs claim. Nor does it limit the CPD's decisionmaking discretion for future employment. See Colburn, 973 F.2d at 589-90 (holding that no such limits were placed on the defendant's ability to decide plaintiffs' continued employment). Nor, finally, do the forms establish a policy guaranteeing reemployment to any employee scoring above 1.6. See id. at 591 (noting that a de facto reappointment guaranteeing continued employment would be contrary to the University's written policy for tenure).
 
 Conclusion
 
 27
 In this case, the plaintiffs are unable to prove any set of facts that support their allegation that they have a property right to reemployment as lifeguards with the CPD. Neither the performance evaluation form nor the procedures form provides a basis for a protected property interest in reemployment. Consequently, the plaintiffs' due process claim fails. The judgment of the district court dismissing the plaintiffs' complaint is therefore affirmed.
 
 AFFIRMED
 
 
 [1]
 Illinois courts recognize industries that seasonally employ and terminate at-will employees. See e.g., Albrecht v. Industrial Comm'n, 648 N.E.2d 923 (Ill.App.Ct.1995) (football industry); Motch v. Pine Roofing Co., 533 N.E.2d 1 (Ill.App.Ct.1988) (roofing industry)
 
 
 [2]
 Although the plaintiffs did not append the performance evaluations or other documents (the evaluation procedures form and affidavits of the plaintiffs) to their complaint, they did append them to their motion for judgment on the pleadings or for partial summary judgment, prior to any responsive filing by the defendants. R.8-R.11. We do not approve of this method of "extending" a complaint with subsequent motions. However, we note that we have permitted documents attached to a defendant's motion to dismiss to be considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to their claim. See Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir.1994); Venture Assocs. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir.1993). Because the plaintiffs provided the crucial documents to the court and to the defendants before the defendants responded to the complaint with a motion to dismiss, we consider them to be part of the pleadings. The district court properly considered them without converting the motion to dismiss into a motion for summary judgment. See Wright, 29 F.3d at 1248
 
 
 [3]
 The defendants assert that this contention is being raised for the first time on appeal and therefore is waived. Although we tend to agree that the complaint fails to articulate this assertion and relies only on the performance evaluation as the basis for the property interest claim, it does refer to the "minimal evaluation of 1.6," R.1 p 25, which is described in the procedures form. For this reason, out of an abundance of caution, we shall address the plaintiffs' broader position
 
 
 [4]
 See Lashbrook, 65 F.3d at 1348 (affirming dismissal of complaint because employee manual did not meet the requirements of contract and thus provided no basis for a protected property interest in continued employment); Corcoran v. Chicago Park Dist., 875 F.2d 609 (7th Cir.1989) (concluding that no contract was created by letters from a CPD Board member because they contained no clear promise or firm offer of continued employment); Lewis v. American Airlines, Inc., 678 N.E.2d 728, 734 (Ill.App.Ct.1997) (holding that an employment regulation contained no offer or promise and thus created no enforceable contract right); Krecek, 646 N.E.2d at 1317-18 (same); cf. Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir.1996) (affirming dismissal of claim on ground that, because no formal acceptance was made, there was no contract capable of supporting a protectable property interest under § 1983)